**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

MICH AUREL, #317239,

    Plaintiff,

    v.

HOLLY LEE PIERCE (CRNP),
WEXFORD HEALTH SOURCES, INC.,

    Defendants.

Civil Action No.:  ELH-18-2463

## MEMORANDUM OPINION

Self-represented plaintiff Mich Aurel, confined at North Branch Correctional Institution ("NBCI"), asserts civil rights violations under 42 U.S.C. § 1983, committed by prison health care provider Wexford Health Sources, Inc. ("Wexford") and Wexford employee Holly Lee Pierce, a Certified Registered Nurse Practitioner.  ECF 1.[1]  Aurel alleges that he has been denied treatment for a multitude of ailments, including abdominal pain; chronic constipation; a colon infection; blood in his stool; an ulcer; infections of the kidneys, stomach, liver, blood, urinary tract, pancreas and large and small intestines; pain in the right hip, right shoulder, and lower back; inability to urinate; prostate and thyroid cancer; liver pain; a liver cyst; throat, neck and chest pain; hoarseness; hypothyroidism; shortness of breath; swollen lymph nodes; and nerve pain.  Further, Aurel claims that he was improperly given an MRI without contrast.  In addition, he complains about the presence of a custody officer during examination, asserting that it is a violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. 104-191.  And, he

---

[1] This Memorandum Opinion cites to pagination assigned by the Court's electronic docketing system.

complains that he is improperly required to buy his own hemorrhoid cream, artificial tears, multivitamins, Motrin, antifungal cream, Tylenol, and aspirin. ECF 1.

Aurel seeks both compensatory and injunctive relief and punitive damages. He requests a colonoscopy (ECF 1 at 3); an MRI with contrast (*id.* at 4); a liver biopsy (*id.* at 5); and treatment to find the underlying cause of his chest pain and shortness of breath. *Id.* at 6.[2]

In response to the Complaint, Wexford and Pierce have moved to dismiss or, in the alternative, for summary judgment. ECF 15. The motion is supported by a memorandum (ECF 15-3) (collectively, the "Motion") and exhibits, including extensive medical records (ECF 15-4) and affidavits, including an Affidavit from NBCI's acting Medical Director, Asresahegen Getachew, M.D. *See* ECF 15-5. Aurel was advised of his right to respond and oppose the dispositive motion (ECF 16) and has done so. ECF 19. He also submitted an exhibit. The defendants filed a reply (ECF 21), along with additional affidavits, including one from Pierce and one from William Beeman, R.N., whom Aurel wrongly accused as having been terminated from a hospital for falsifying *medical* records.[3]

Aurel filed three additional exhibits (ECF 26, ECF 27, ECF 28), which include two affidavits from him. He appears to attempt to amend his Complaint to add new medical defendants and new allegations concerning medications, destruction of sick call slips, destruction of stool cards, denial of a CT scan, denial of medical recommendations by health care providers at

---

[2] Aurel's requests that he be taken to a hospital outside the area of Cumberland, Maryland to be seen by specialists, and that he be provided laser spine surgery (ECF 10 at 3, ECF 14, ECF 17), were denied by Order dated April 23, 2019. ECF 25.

[3] In August 2012, Beeman consented to an order of reprimand from the Maryland Board of Nursing for altering payroll records, resulting in his having received pay that he had not earned. But, Beeman retained his license as a registered nurse. *See In the Matter of William James Beeman,* Consent Order of Reprimand, ECF 19-1 at 6-11; ECF 21-2.

University of Maryland Hospital, refusal to act on a physician's recommendation, denial of pain medication, and denial of assistive devices, including a back brace, cane, and walker.[4]

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, I shall grant the Motion.[5]

## I. Background

The parties do not dispute that Aurel is in his early fifties with a significant medical history of hypothyroidism, asthma, constipation, prostate enlargement, cough, hyperlipidemia, and esophageal reflux. ECF 15-5 (Getachew Aff.), ¶ 4. Defendants further note that Aurel has a mental health diagnosis of hypochondria and somatic symptom disorder. *Id.,* ¶¶ 5, 8. Because of his conditions, Aurel is a chronic care patient who is scheduled for regular evaluation by physicians and mid-level health care providers who manage and monitor his conditions. *Id.* ¶¶ 9, 22.

Prior to January 1, 2019, Defendant Wexford was a private health care provider under contract with the Maryland Department of Public Safety and Correctional Services ("DPSCS") to provide primary health care services and utilization management services for Maryland prisoners.

---

[4] Defendants moved to strike the submissions to the extent they are surreplies. ECF 29. Surreply memoranda are not permitted unless otherwise ordered by the Court, *see* D. Md. Local R. 105.2(a) (2018), and are generally disfavored in this District. *See Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013). However, they may be permitted "when the moving party would be unable to contest matters presented to the Court for the first time in the opposing party's reply," *TECH USA, Inc. v. Evans*, 592 F. Supp. 2d 852, 861 (D. Md. 2009). Although this exception is not applicable here, to the extent the submission is a surreply, I shall deny the motion to strike (ECF 29).

To the extent that Aurel wishes to amend his Complaint to add new parties and allege problems with medical care occurring in 2019, such amendment is denied. In this regard, I note that on January 1, 2019, another health care provider, Corizon, commenced a new contract with the Maryland Department of Public Safety and Correctional Services. *See* http://www.corizonhealth.com/Corizon-News/corizon-health-to-partner-with-the-state-of-maryland (last reviewed May 30, 2019).

ECF 15-5, ¶ 1.  Defendant Pierce was employed by Wexford to provide nurse practitioner services to prisoners at NBCI.  ECF 21-1 (Pierce Aff.), ¶ 1.

### A.     Aurel's Allegations

Aurel's illnesses, both real and perceived, have been addressed in several prior lawsuits filed by Aurel in this Court.  *See*, *e.g.*, *Aurel v. Wexford, et al.,* Civil Action ELH-15-1127, consolidated with ELH-15-1797 (D. Md.) (summary judgment granted to medical defendants; complaints of abdominal, throat and chest pain, coughing, blurred vision, vomiting, blood in stool, constipation, weakness, ear pain, cancer of the throat, stomach, pancreas, gallbladder, eye and liver); *Aurel v. Wexford, et al.,* Civil Action ELH-16-1293 (D. Md.) (summary judgment granted to medical defendants; complaints of lower back and head pain stemming from 2009 fall, destruction of sick call requests, and denial of back brace); *Aurel v. Wexford, et al.,* Civil Action ELH-18-1251 (D. Md.) (summary judgment granted to medical defendants; complaints of lower back pain, abdominal pain, throat pain, tongue infection, thyroid, liver, prostate and colon cancers, gastrointestinal problems, including constipation, ulcers and blood in stool, and hepatitis A & B infection).  Examination of these prior cases demonstrates that Aurel's concerns that he suffers from physical ailments, although mostly unfounded, are legion.

With regard to his claims against Nurse Practitioner Pierce, Aurel alleges that Pierce (1) bears responsibility for limiting his MRI to a procedure without contrast dye, making it impossible to show "nerves and veins in the body" and precluding proper diagnoses; (2) refused to provide him medication for nerve pain and arthritic pain; and (3) failed to follow up on his sick call slips. ECF 1 at 3-4.

In addition to Aurel's claims against Nurse Pierce, Aurel states the medical notes found at ECF 15-4 at 37, 39, 41, 43, 45, 47, 59 and 51 are falsified because the names and signatures of

those who were to provide the medications listed are merely printed onto a blank form, ECF 19 at 2, ¶ 12(iii); nothing in the record proves he is non-compliant with medication (*id.* at ¶ 20); and the record does not show any medications dispensed since August 2018. *Id.* at ¶ 19.

### B. Defendants' Assertions

Wexford contends that it is entitled to dismissal because Aurel fails to identify unconstitutional policies and procedures that were the motivating force behind its employee's alleged denial of medical care, and because the doctrine of *respondeat superior* is not recognized in civil rights actions brought pursuant to 42 U.S.C. § 1983. ECF 15-3 at 15-16.

Pierce contends that she did not personally participate in any wrongdoing, that the treatment rendered did not violate the Eighth Amendment's prohibition against cruel and unusual punishment, and that Aurel, a frequent litigator in this Court, is engaged in "claim splitting." *Id.* at 9-12, 18-24. Defendants also argue jointly that a violation under HIPAA has not occurred, and that any allegations of medical negligence are not judicially actionable in this forum. *Id.* at 13-14, 16-17.

The medical records provide the following information, summarized in an Affidavit submitted by Asresahegn Getachew, M.D., Wexford's acting Medical Director at NBCI.

Aurel is obsessive and fixates on certain symptoms, then wrongly diagnoses himself, sometimes amplifying his symptoms on presentation to health care providers. ECF 15-5, ¶ 8. He confuses symptoms he has reported and treatments and medications received and refuses to accept clinical evidence-based diagnoses and treatment plans, particularly when that evidence

contradicts his own diagnoses. *Id.*[6] Dr. Getachew also avers that, despite Aurel's allegations that lab results have been fabricated, his lab work is performed by Garcia Laboratory in Michigan and is not fabricated. *Id.* Plaintiff has been assessed by psychiatry as hypochondriacal. *Id.*

Dr. Getachew also avers that Aurel photocopies and resubmits multiple, repetitive sick call slips for the same issues weekly and sometimes daily.[7] Until December of 2017, a mid-level provider evaluated those slips. In December 2017, that evaluation was changed to monthly. In November of 2018, Aurel was returned to a regular chronic care clinic ("CCC") schedule, wherein he is seen by a provider every three months. His sick call slips are reviewed when submitted and he is seen for regular sick call within 48-72 hours (the same procedure for all prisoners), but repetitive slips are held for review during CCC. *Id.*, ¶ 9. Because Aurel is non-complaint with medications, the pharmacy must sign for his "keep on person" medications and CCC medications are required to be directly observed ("DOT" or "directly observed therapy") when taken. *Id.*, ¶ 10.

Aurel does not have thyroid, prostate, colon, or eye cancer, as demonstrated by lab results. *Id.*, ¶ 11. His 2016 colonoscopy was "unremarkable." *Id.* But, subsequent guaiac stool tests were positive for blood in his stool. *Id.* At the time of Dr. Getachew's Affidavit in November 2018, he said that plaintiff was "being scheduled for a gastroenterology consult"

---

[6] Aurel provided the court with a summation reflecting the hundreds of sick call slips he has submitted since 2015, as well as a list of medications he believes would benefit his disorders. *See* ECF 20.

[7] In his Opposition, Aurel states that all his sick call slips are not included in the record and implies that the medical record is therefore incomplete. ECF 19, ¶ 19. He identifies no circumstance under which he did not visit medical personnel on a routine basis, nor does he suggest that his many health care concerns were unknown to medical personnel. Aurel's argument to the contrary, there is no significance to Wexford's omission of repetitive sick call slips from the record.

because of his stool tests. *Id.* Aurel states that he had the gastroenterology consult on December 24, 2018. ECF 22 at 1, ¶ 2.[8]

Aurel's vision was tested in February of 2018 and, other than needing corrective lenses, Aurel's exam was unremarkable. ECF 15-5, ¶ 11. Aurel's gums, throat and tongue have been evaluated by both medical and dental providers and are unremarkable, and his lymph nodes are not enlarged. *Id.* He has been educated on these conditions but refuses to believe his medical providers' assessments. *Id.*

In addition, Dr. Getachew avers that Aurel has chronic medical conditions for which he is receiving regular medical care, including hypothyroidism, asthma, and hyperlipidemia. *Id.* ¶ 12. His hypothyroidism is well controlled with medication and his thyroid levels are normal. Aurel's asthma is stable and controlled with an albuterol inhaler, and his hyperlipidemia is treated with a statin medication and fiber supplement. *Id.*

Further, Dr. Getachew avers that, notwithstanding plaintiff's frequent complaints of low back and right hip pain radiating down his right leg to his foot, Aurel has no anatomical disorder causing such pain. *Id.*, ¶ 13. An x-ray of his LS spine and right hip were normal. Aurel does, however, have some spinal changes that are being monitored. The July 2018 MRI of the cervical spine revealed spondylotic changes[9] at C 6-7, resulting in a moderate right and mild left foraminal stenosis. *Id.*[10]

---

[8] The Affidavit lists Aurel's concerns that prescribed medications were not filled in December of 2018. ECF 22, ¶ 2. Nurse Pierce is not alleged to bear responsibility for these omissions, which are not considered here.

[9] Spondylosis is a general term for age-related wear and tear affecting the spinal disks. *See* https://www.mayoclinic.org/diseases-conditions/cervical-spondylosis/symptoms-causes/syc-20370787 (last reviewed May 30, 2019).

[10] Foraminal stenosis is narrowing of disc spaces caused by enlargement of a joint in the spinal canel. Symptoms often are caused by pressure on a nerve and diagnosis is confirmed by

Although the MRI of Aurel's thoracic spine was normal, the MRI of his lumbar spine revealed mild spondylotic changes at L4-5 where there is a small tear and broad disc bulge. Dr. Carls, an orthopedist, has recommended the reevaluation of Aurel by a spine surgeon as a result of this condition, which Dr. Getachew identified as a pinched nerve. *Id.* Dr. Getachew notes that Dr. Carls first recommended conservative treatment with stretching exercises, and that Dr. Getachew reviewed the MRI results with Aurel and specifically told him that he would benefit by exercise, strengthening his core muscles, and losing weight. *Id.* at ¶ 15. Although physical therapy helped in July 2017, Aurel no longer wants physical therapy. *Id.* In July 2018, Dr. Getachew ordered an MRI of the cervical and thoracic spine, without contrast. *Id.* Dr. Getachew opines that Aurel's argument that the MRI should have included contrast is incorrect as there was no necessity for an MRI with contrast. *Id.*

Dr. Getachew also avers that Aurel has been treated with Neurontin, Baclofen, Cymbalta, Mobic, and Robaxin for pain, but he exhibits a certain amount of drug seeking behavior, as he consistently requests to be put on Vicodin and Tramadol. *Id.*, ¶ 16. Dr. Getachew also notes that Aurel has received medications for neuropathic pain, including amitriptyline, Neurontin, and Cymbalta, and is currently prescribed Nortriptyline. *Id.* Further, Aurel is provided Miralax to address his constipation and abdominal pain. *Id.,* ¶ 17. A January 2018 ultrasound was unremarkable, except for indications of hepatic steatosis (fatty liver), but liver function tests remain normal, although a benign liver cyst has grown, *Id.*

No clinical evidence supports Aurel's complaints of frequent urination, and his prostate antigen tests ("PSAs") are normal. *Id.*, ¶ 18. Aurel is not diabetic, and he receives Terazosin to

---

MRI or CT scan with myelogram. *See* https://www.mayoclinic.org/diseases-conditions/cervical-spondylosis/symptoms-causes/syc-20370787 (last reviewed May 30, 2019).

treat urinary hesitancy. *Id.* The Court notes that Dr. Getachew's averment that Aurel does not have an enlarged prostate upon examination., *id.*, is somewhat contradicted by a July 16, 2015 CT scan which showed slight enlargement of the prostate. ECF 19-1 at 3.

Aurel had been prescribed lozenges for his sore throat, which may be due to his use of inhalers. But, these were discontinued after he reported they did not help. His allergies are treated with Zyrtec. *Id., ¶* 19.

Dr. Getachew also asserts that the DPSCS policy at NBCI requires prisoners to purchase over-the-counter medications and hygiene items from the commissary. *Id., ¶* 21. If a prisoner is indigent, he will be prescribed medically indicated medications otherwise available from the Commissary. Aurel does not have a current medical need for hemorrhoid ointment, antifungal cream, artificial tears, multivitamins, Motrin, Tylenol, and aspirin and these products are not provided to him. *Id.*

Additional facts are included in the Discussion.

## II.     Standard of Review

### A.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw

all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 423 (2018); *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 573; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)). But, the Supreme Court has explained that a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted; alteration in *Twombly*).

Moreover, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570); *see Paradise Wire & Cable Defined Benefit Pension Fund Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted); *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). Put another way, "an unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Comm'w of Va.*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quotation marks and citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*); *see Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007). "Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Under limited circumstances, however, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint

without converting the motion to dismiss to one for summary judgment. *Goldfarb*, 791 F.3d at 508.

In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166; *see also* Fed. R. Civ. P. 10(c); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Paradise Wire & Cable*, 918 F.3d at 318. Notably, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Goines*, 822 F.3d at 167. Therefore, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Id.* (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)).

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citation omitted); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543

U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Here, the defendants argue that the Complaint does not survive analysis under Rule 12(b)(6). They claim that Nurse Practitioner Pierce played little or no direct role in Aurel's care. The defendants also provide documentary evidence suggesting that Aurel nonetheless has received constitutionally adequate treatment for his various medical conditions. These documents are not intrinsic to Aurel's Complaint, however. Therefore, they may only be considered in the context of a motion for summary judgment.

**B.**

As noted, the Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see*

*Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed Appx. 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. Appx. 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954,

961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion

when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. Appx. at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. Appx. at 638.

Aurel has not filed an affidavit under Rule 56(d), nor has he objected to defendants' Motion under principles of summary judgment. Further, defendants have provided Aurel with extensive and updated medical records and other exhibits filed with the court. Thus, the court is satisfied that it is appropriate to address part of the Motion as one for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).  And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank*

*v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

### III. Discussion

### A.

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*,

767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Section 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative

factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

## B.

Wexford moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. As noted, liability is imposed under 42 U.S.C. § 1983 on "any person who shall subject, or cause to be subjected, any person . . . to the deprivation of any rights...." Private businesses that employ individuals who act under the color of state law are considered "persons" under § 1983. *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-29 (4th Cir. 1999). But, there is no respondeat superior liability under § 1983.[11] *See Love-Lane v. Martin,* 355 F.3d 766, 782 (4th Cir. 2004). Rather, a private corporation may be held liable under § 1983 "only when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin,* 195 F.3d at 728.

Aurel attributes the medical staff's decision to follow up on only some of his sick call slips as a policy amounting to a denial of health care. ECF 19 at 2-3. He also claims that unidentified

---

[11] The doctrine of *respondeat superior* holds an employer legally responsible for wrongful acts done by an employee if such acts occur within the scope of employment.

health care providers falsify records that he has received medications. *Id.* Aurel cites no specific official Wexford policy or custom that allegedly deprived him of his constitutional rights. Further, there is no constitutional basis to require medical personnel to provide prisoners with over-the-counter medications not otherwise medically prescribed as necessary.

In addition, plaintiff claims that his patient confidentiality rights under HIPAA were violated because a correctional officer was present at his examination on December 15, 2016. HIPAA, 42 U.S.C. § 1320d *et seq.*, establishes standards and regulations to protect the privacy and accuracy of medical records. The statute does not, however, provide a private right of action for any citizen. *See Garmon v. Cnty. of Los Angeles,* 828 F.3d 837 (9th Cir. 2016*); Dodd v. Jones*, 623 F.3d 563 (8th Cir. 2010); *Wilkerson v. Shinseki*, 606 F.3d 1256 (10th Cir. 2010); *Miller v. Nicholas*, 586 F.3d 53 (1st Cir. 2009); *Acara v. Banks,* 470 F.3d 569 (5th Cir. 2006). Therefore, Aurel cannot bring a claim under HIPAA.

Aurel has failed to allege facts to show Wexford's liability under § 1983. Therefore, the claim against Wexford will be dismissed.

## C.

The Eighth Amendment to the Constitution prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th

Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178.

In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97.

The deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *Farmer*, 511 U.S. at 837; *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).

A "'serious ... medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). Moreover, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires a determination as to whether the defendant acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40.

In order "[t]o show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178. In other words, deliberate indifference requires a showing that the defendant disregarded a substantial risk of harm to the prisoner. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

As the *King* Court reiterated, 825 F. 3d at 219: "The requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" (citation omitted). Although this "'entails more than mere negligence ... it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer*, 511 U.S. at 835). Thus, the subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40; *see also Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017). "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). As the *Farmer* Court explained, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant]

must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Notably, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.; Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it ... [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences ... To lower this threshold would thrust federal courts into the daily practices of local police departments."). Therefore, mere negligence or malpractice does not rise to the level of a constitutional violation. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle v. Gamble, supra*, 429 U.S. at 106).

Of relevance here, "[t]he right to treatment is . . . limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added). Stated another way, "society does not expect that prisoners will have unqualified access to healthcare." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Hudson v. McMillian*, 503 U. S. 1, 9 (1992)).

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge,

including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). In other words, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk . . . ." *Brice*, 58 F.3d at 105.

In *Scinto*, the Fourth Circuit said, 841 F.3d at 226:

> A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official ... had been exposed to information concerning the risk and thus must have known about it...." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842 114 S.Ct 1970). Similarly, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

Even if the requisite subjective knowledge is established, however, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)); *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016).

A delay in medical treatment may constitute deliberate indifference. *Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009) (citing *Estelle*, 429 U.S. at 104-05). In that circumstance, the plaintiff must show, however, that the delay in providing medical care caused him to suffer substantial harm. *See Webb v. Hamidullah*, 281 Fed. Appx. 159, 166, 2008 WL 2337608 * 6 (4th Cir. 2008). Substantial harm can be shown by "lifelong handicap; permanent loss, or considerable

pain." *Shabazz v. Prison Health Servs. Inc.*, 2011 WL 3489661, at * 6 (E.D. Va. 2011) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); *see also Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995).

Here, the medical records reveal that Pierce saw Aurel on seven occasions between March 14 and September 12, 2018. According to Aurel, at his scheduled visit on March 14, 2018, he was denied Neurontin[12] and Robaxin,[13] which had been prescribed by the orthopedist. ECF 19 at 2, ¶ 12(i). The record indicates otherwise, however. Pierce "explained the indications" for each medication and "offered alternative treatments," but Aurel refused them because he wanted Vicodin[14] and threatened legal action if Vicodin was not prescribed. ECF 15-4 at 2.

Aurel has received pain medication adjustments, and some medications have been limited or removed from his pain management regimen due to side effects, including gastric issues. It is unfortunate if Aurel is not pain-free. But, to the extent Aurel argues his pain medication is ineffective, it is not always possible to eliminate all pain, and the inability to do so is insufficient to establish deliberate indifference. *Baez v. Falor*, 2012 U.S. Dist. LEXIS 138574, 103,2012 WL 4356768 (W. D. Pa. 2012) (citing *Thomas v. Coble*, 55 F. App'x 748, 749 (6th Cir. 2003); *Rochell v. CMS*, No. 4:05CV268, 2006 U.S. Dist. LEXIS 37943, at 10 (N. D. Miss. April 10, 2006) ("The constitution does not . . . guarantee pain-free medical treatment")).

---

[12] Neurontin (gabapentin) is used to relieve nerve pain. *See* https://www.webmd.com/drugs/2/drug-9845-8217/neurontin-oral/gabapentin-oral/details (last reviewed May 30, 2019).

[13] Robaxin (methocarbamol) is a muscle relaxer. *See* https://www.rxlist.com/robaxin-drug.htm#description (last reviewed May 30, 2019).

[14] Vicodin is a pain reliever that contains both an opioid and a non-opioid, acetaminophen. *See* https://www.webmd.com/drugs/2/drug-3459/vicodin-oral/details (last reviewed May 30, 2019).

On April 19, 2018, Pierce was present during Dr. Getachew's examination of Aurel. Dr. Getachew reviewed Dr. Carls' recommendations, continued various medications, and ordered an MRI of Aurel's lumbar, cervical, and thoracic spine, to determine whether surgery or treatment with non-narcotic medications might be required. ECF 15-4 at 7-10. Pierce submitted the order for an MRI without contrast. *Id.* at 9-10. Nothing in the record suggests that Pierce's order deviated from Dr. Getachew's decision not to include contrast dye with the MRI.

On May 18, 2018, Pierce terminated her visit with Aurel, who was hostile and demanding Vicodin. *Id.* at 12-13.

Pierce saw Aurel on June 21, 2018, for multiple complaints, including liver and colon cancer and constipation. *Id.* at 14-17. Aurel demanded Humira, and Pierce explained this medication was not indicated for his condition, which was shown by recent ultrasound to involve a liver cyst. Pierce told Aurel to purchase lotion for dry skin and mouthwash from the commissary, and that an antibiotic was not needed, despite his claim that he had thyroid cancer. *Id.* Nortriptyline[15] and capsaicin ointment were renewed through October 21, 2018. *Id.*

On July 11, 2018, Pierce submitted a consult request for Aurel to see a gastroenterologist because three occult blood stool tests were positive. *Id.* at 21-22. And, on July 27, 2018, Pierce submitted a consult to orthopedics for review of Aurel's MRI of the spine. *Id.* at 23.

On September 12, 2018, Aurel told Pierce his constipation had resolved. *Id.* at 34-35. He was advised to buy lotion from the commissary for his dry skin and told that eye drops were not

---

[15] Nortriptyline is used to treat problems such as depression and anxiety. *See* https://www.webmd.com/drugs/2/drug-10710/nortriptyline-oral/details (last reviewed May 30, 2019).

clinically indicated for his blurry vision and itchy eyes.  *Id.*  He was told to take his high blood

pressure medication as prescribed to help with his claim that he could not void fully.  *Id.*

The Eighth Amendment claims lack merit.

### D.

To the extent that Aurel premised his Complaint not on a federal claim, but instead on

allegations of negligence or medical malpractice by Wexford and Pierce, such a claim cannot

proceed here.  Absent federal question jurisdiction, there is no indication that diversity jurisdiction

exists under 28 U.S.C. § 1332.  Further, even assuming supplemental jurisdiction is derived

pursuant to 28 U.S.C. § 1367, the Court is nonetheless constrained from considering any

negligence or malpractice claims on the merits, as Aurel's Eighth Amendment claims are

unsupported by the record.

Even if the Eighth Amendment claims had merit – which they do not -- the Maryland

Health Care Malpractice Claims Act ("the Act"), Md. Code, Cts. & Jud. Proc. § 3-2A-01, *et seq.*,

requires that claims against a health care provider for medical injury be submitted to the Health

Care Alternative Dispute Resolution Office as a condition precedent to any judicial action. *See id.*

at § 3-2A-02; *see also Roberts v. Suburban Hospital Assoc., Inc*., 73 Md. App. 1, 3 (1987); *Davison*

*v. Sinai Hospital of Balt. Inc.*, 462 F. Supp. 778, 779-81 (D. Md. 1978), *aff'd*, 617 F.2d 361 (4th

Cir. 1980).  This requirement applies to claims of medical negligence filed in federal court.  *See*

*Davison*, 462 F. Supp. at 779-81.

When assessing a claim for medical malpractice, a court is required to focus on "whether

the claim is based on the rendering or failure to render health care and not on the label placed on

the claim." *Brown v. Rabbit*, 300 Md. 171, 175 (1984).  A court is required to dismiss an action

for noncompliance with the Act where a party has failed to exhaust his administrative remedies

under the Act. *See Roberts,* 73 Md. App. at 6; *see also Davison*, 462 F. Supp. at 781. As the proper standards of medical care are implicated here, Aurel's claims, to the extent they are construed as claims of negligence or medical malpractice, are subject to the Act's requirements. Because there is no showing that the Act's requirements were met, supplemental jurisdiction over these claims will not be extended.

### IV.    Conclusion

"Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970)). Aurel's belief that he has received inadequate medical care for his real and perceived health concerns is not supported by the record. At present, there are no exceptional circumstances sufficient to overcome defendants' assessment that they have provided Aurel with appropriate and timely treatment as required for his current medical conditions.

Defendants' Motion shall be granted. A separate Order follows.


Date:  June 4, 2019                                           _____/s/_____
                                                             Ellen L. Hollander
                                                             United States District Judge